**WAIDLEY v. SMITH et al.**

No. 21317. Opinion Filed Nov. 29, 1932.

E. W. Snoddy, for plaintiff in error.

W. L. Houts, for defendants in error.

KORNEGAY, J. This is a proceeding to reverse the action of the district court of Woods county in rendering judgment and refusing a new trial, in a suit brought by the plaintiff in error upon two promissory notes, one of which was payable to himself and the other of which was payable to Ruth B. Chick. Both notes appear to have been dated February 21, 1924, and copies of them are set out with the petition. The note to Ruth B. Chick bore the indorsement on the back of it "Ruth B. Chick." Allegations were made as to the amount due on both notes, and demand was made for the amount thereof. There was specific statement as to being the owner and holder of the note that had been made to Ruth B. Chick, and a specific statement of the other note having been executed to the plaintiff. The note that was made to the plaintiff called for $628.38, and was dated February 21, 1924, and was due in six months. The note that was payable to Ruth B. Chick called for $813.42, and was due and payable in like manner.

An answer was filed containing a general denial, and also denying the execution of the paper to R. W. Waidley, plaintiff, and averring that the note was made to the First National Bank of Waynoka, Okla., and the same allegation was made with reference to the note to Ruth B. Chick, and there was a further allegation that the notes had been fully paid and satisfied. The manner and time of payment was not set out. There was a further allegation that if the names of Waidley and Chick appeared in the notes at the time they were signed, the notes were without consideration and void. This was verified as being true. However, when the opening statement was made, the defendants admitted the execution of the notes, and with the introduction of the notes, the plaintiff rested.

The defendant introduced proof, and, after considerable objections, some mortgages were offered in evidence, purporting to secure the notes, but on comparison the mortgages did not secure the notes by description, and it is very doubtful, under this record, whether the mortgages were ever admitted in evidence. However, one of the witnesses explained what the mortgages were, and the larger note was secured by a second mortgage on some wheat, the first mortgage on the wheat being given to the First National Bank of Waynoka for a note for $603.77. It was taken in the name of the cashier, the plaintiff in this case.

The evidence of any payment having been paid on these notes was very weak. In fact, the evidence of the defendant indicated, when the amount of admitted indebtedness, owing by the defendants to the bank, was taken into the account, that there never was any payment made upon the notes in question. The positive testimony, however, on the other side, was to the effect that nothing had been paid on these notes. There was a large indebtedness to the First National Bank of Waynoka, that had been accumulating for several years, and, under the undisputed evidence in this case, the two notes in question arose out of the reduction of the indebtedness some years before, by the cashier taking out of the bank a good deal of the indebtedness to the bank that he as cashier had allowed the defendant to incur.

Apparently the only source of revenue that the defendant had was a wheat crop, with which to liquidate a large amount of indebtedness to the bank, and, according to the practically undisputed testimony, the expenses connected with the wheat crop, and the living expenses of the defendants, were such that there was practically nothing to apply either on the bank's notes or on these notes, out of the source of revenue that was relied upon.

The burden to establish payment of the notes necessarily rested on the defendants, and that burden was not met by the evidence. When one examines the chattel mortgages that were made, and that are in evidence, upon the cattle and horses to the bank, upon the day of the date of these notes to the other parties, and applies any knowledge of the value of property thereto, it is convincing that the defendants at that

time were practically insolvent, and that the security called for in the exhibits, marked in this record as "Defendants' Exhibits 3 and 4," which were two chattel mortgages on live stock and machinery, the property being the same in both, the first being for $800 and being on some cattle, horses, and a header, wheat drill, two walking listers, and an iron wheel wagon and a set of double harness, and another purporting to be a first mortgage upon apparently the same property, and all other farm machinery and farm equipment not itemized, and the increase of common mixed cattle to secure $2,473.25, considering the age of the mares, was very poor, and yet the evidence shows that this was all the security that the defendants had, in fact, there would have been a shortage, any one would reasonably conclude, in the event of a foreclosure of a large amount of the indebtedness.

The case apparently was rather loosely tried, and some inferences were sought to be drawn from the discount sheets, and also ledger accounts of the Bank of Waynoka, that the 1,350 bushel wheat crop had paid off these notes, as well as the notes to the bank, that all parties appeared to recognize was secured by a first mortgage upon the wheat.

The trial court gave instructions Nos. 1, 2, 3, and 4, being as follows:

"1. The plaintiff claims, in substance, as follows: That on or about the 21st day of February, 1924, the said defendants made, executed, and delivered their two certain promissory notes of that date, one for the sum of $813.42 to Ruth P. Chick, and one for the sum of $628.38 to the plaintiff, due and payable six months after date with 10 per cent. interest from maturity until paid. That the plaintiff is the owner and holder of said notes. That on or about the 21st day of August, 1924, the said notes became due and payable and that the said defendants have not paid the same or any part thereof, and that there is due thereon the sum of $2,088 with 10 per cent. interest from December 12, 1928, for which he prays judgment.

"The defendants deny under oath all of the claims made by the plaintiff.

"Defendants further claim that the said notes have been paid, and that there is, therefore, nothing whatever due thereon.

"Given and excepted to by plaintiff. Arthur G. Sutton, Judge.

"2. The burden is upon the plaintiff to prove the claims made by him by a preponderance of the evidence.

"By a 'preponderance of the evidence' is not meant the greater number of witnesses who testify for or against a given proposition, but means such evidence as best satisfies your minds of the truth of the issues involved.

"The burden is upon the defendants to prove payment as claimed by them.

"Given and excepted to by plaintiff. Arthur G. Sutton, Judge.

"3. One owing various items of indebtedness has the right, on making payments, unless the money was obtained by the sale of mortgaged property, to direct to which of the various items of indebtedness the same shall be applied, and it is the duty of the one receiving said payment, unless he has a mortgage on the property sold from which the money was obtained, to apply the money to the items of indebtedness as directed by the debtor. If the one receiving the payment has a mortgage on the property which was sold and for the proceeds of which the money was obtained, then he may apply the money to the discharge of the indebtedness secured by the mortgage. If, when payment is made by a debtor he makes no direction as to what item of indebtedness the same shall apply, the creditor has the right to apply it to any indebtedness he may see fit, even if it is the proceeds of property on which he holds a mortgage, but he thereby waives his mortgage.

"If a debtor leaves money with a bank and directs that it be applied to the payment of his note and the money is deposited to his checking account and he checks out the money and thus uses it, he cannot then complain that the money was not applied as he directed.

"Given and excepted to by plaintiff. Arthur G. Sutton, Judge."

"4. If you believe from the evidence, facts, and circumstances that, on the 21st day of February, 1924, the said defendants made, executed, and delivered, as claimed by the plaintiff, the said two promissory notes and that the plaintiff is the owner and holder thereof, that the same or some part thereof has not been paid, then your verdict should be for the plaintiff for such sum as you find to be due. In the event you find the notes have been fully paid, or that the plaintiff is not the owner and holder thereof, then your verdict should be for the defendants.

"Given and excepted to by plaintiff. Arthur G. Sutton, Judge."

Exceptions were taken below to these instructions, and the brief of the plaintiff in error here contains a statement of the facts and an argument as to the probable effect of these instructions upon the mind of the

jury, and the assignments are based upon the overruling of motion for new trial, and the giving of instructions Nos. 1, 2, and 4. As to instruction No. 1, it is clear that at the time these instructions were given the defendant had admitted the execution of those notes, and was not denying under oath their execution, though they were claiming the payment to have been made. Instruction No. 2 tells the jury that the burden was upon the plaintiff to prove the claims made by him by a preponderance of the evidence. This was given in face of the fact that the execution of the notes was admitted. The fourth instruction leaves to the jury to find the execution and delivery of the notes, which was admitted, and so far as the plaintiff being the owner of the first one, apparently, the evidence did not controvert that or the assignment either. So far as the payment is concerned, the method of payment that was relied upon was not at all positive, but merely an inference from the fact that the proceeds of the wheat crop went into the bank.

The defendants in error in their reply brief insist that, in their answer, they made denials sufficient to warrant the instruction. However, in their opening statement they, in large measure, recanted with reference to some of the denials, and the evidence is clear that there was nothing really in controversy before the jury as to the execution of the notes. The presumption of payment that was raised by the circumstances was worse than weak. In fact, the defendants did not claim to have made any postive payments on the notes, they only claimed that the proceeds of the wheat were turned over to the plaintiff, as cashier of the bank, to apply upon the notes that were secured by the wheat, but it is very evident that, after the expense of taking care of the wheat was paid, there would be very little left to apply upon the note that the bank had that was secured by the wheat crop, and it appears to be uncontradicted that the note that was held by the plaintiff, Waidley, originally made to him, was not secured by the wheat crop, and that the other note merely had a second mortgage, and that neither of the payees ever received anything upon the notes.

The case should be reversed by reason of the errors of the court, and by reason of the weakness of the testimony as to the payment, when the execution of the notes was acknowledged.

The case is accordingly reversed, with directions to grant a new trial.

LESTER, C. J., and CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., and RILEY and HEFNER, JJ., absent.